IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 12-cv-01630-LTB

MICHAEL SEYMORE,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

ORDER
_____

Plaintiff Michael Seymore appeals Defendant's (the "Commissioner") final administrative decision denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision.

## I.  Statement of the Case

A hearing on Plaintiff's claim was held before an administrative law judge (the "ALJ") on September 2, 2010. On November 1, 2010, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's November 1, 2010 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II.  Statement of Facts

**A. Background**

Plaintiff was born on December 29, 1961, making him 46 years old at the time of alleged disability onset date of March 19, 2008. Administrative Record ("AR") 153. Plaintiff completed two years of college and truck driving school and has worked in the past as a driver, day laborer, yard foreman, and mover. AR 159, 167 & 170. Plaintiff alleges disability as a result of "[a]sthma, gout, hernia, diabetes, depression, hypertension, insomnia, [and] kidney problems." AR 159. Plaintiff worked as a day laborer for approximately 5 months after his alleged disability onset date, and his insured status for disability insurance benefits expired on June 30, 2010. AR 15 & 170.

**B. Medical Evidence**

    **1. Medical Evidence Before the ALJ**

Since 2006, Plaintiff has had complaints of foot pain. AR 322, 345 & 412. On December 11, 2007, the Department of Corrections performed an SSI physical assessment of Plaintiff. AR 342-43. Plaintiff's chief complaints were listed as asthma since birth and gout. AR 342. The examining nurse noted that Plaintiff's lungs had occasional wheezes and were slightly diminished throughout and that his toes on both feet had swelling, redness, and pronounced bony prominences but assessed Plaintiff with no apparent disability from asthma or gout and no functional limitations. AR 343.

Approximately two weeks prior to his alleged March 19, 2008 disability onset date, Plaintiff was examined by Dr. Scott McGlaughlin of the Department of Corrections. AR 328. Dr. McGlaughlin observed that Plaintiff was on extensive medications with constant complaints of shortness of breath despite no clinical indication of a problem. *Id.*

In July of 2008, Plaintiff began to see Robert Ridley, M.D., a general practitioner, and other staff at the Mission Medical Clinic. AR 434. Dr. Ridley noted that Plaintiff's chief complaints at that time were asthma and gout. *Id.* In March of 2009, Plaintiff's "problems" were listed as asthma, gout-severe, hypertension, BPH, obesity, hyperlipidemia, probable thalassemia trait, high output renal compromise, anxiety/insomnia, and type II diabetes mellitus. AR 449.   On a diabetes data form completed in April of 2009, Plaintiff's gout and asthma were assessed as "stable." AR 427. Around this same time, Plaintiff reported that he was exercising for one hour, consisting of 30 minutes of cardiovascular exercise and 30 minutes of weight training, 6 times a week. AR 422.

In June of 2009, Plaintiff sought treatment in the emergency room after he injured his right knee "playing ball." AR 359. Shortly thereafter, Plaintiff was seen at the Mission Medical Clinic where he was observed to lack 15% of full flexion but full extension. AR 417. A week after his initial injury, Plaintiff went to a different emergency room complaining of right knee pain which he denied was the result of an injury. AR 392. X-rays of Plaintiff's right knee showed only mild degenerative changes and Plaintiff's knee was doing much better by July of 2009. AR 395 & 415.

On September 13, 2009, Plaintiff sought treatment in the emergency room for back pain. AR 492-94. X-rays taken at the time appeared "normal," and Plaintiff was diagnosed with acute low back strain. AR 494. Another x-ray taken a few days later was "technically limited" but the physician interpreting it nonetheless found mild degenerative changes of the spine. AR 489-90. In October of 2009, Plaintiff's back and joint pain had improved, and spirometry tests showed that Plaintiff's asthma caused a "severe obstruction" in his breathing that significantly

improved with medication.  AR 583 & 598.

In December of 2009, Plaintiff saw William Qutub, M.D., for a state-ordered consultative examination.  AR 497-503.  After examining Plaintiff and reviewing his medical records, Dr. Qutub made the following diagnoses:

> 1. Asthma.  Mild airway obstruction with spirometry today. [Plaintiff] appeared mildly short of breath with soft grunts throughout [ ] examination.  No respiratory distress observed.  Reports multiple respiratory medications.
>
> 2. Arthritis with a history of gout.  No tophus identified on examination.  There appears to be a degree of inadequate analgesic management, and symptoms may be exacerbated by obesity.
>
> 3. Insulin dependent diabetes mellitus.  Strongly recommend weight management, history suggests glucose improvement following initiation of metformin.
>
> 4. Obesity.  Body mass index (BMI) is 36.4.
>
> 5. Hypertension.  Significant blood pressure elevation today.  Strongly recommend return to primary care provider and reconsideration of antihypertensive management.  Blood pressure values today could represent rebound hypertension if he missed the clonidine.

Dr. Qutub also reported that Plaintiff scored 30 out of 30 on his "minimental status examination" and "was alert without signs of overt anxiety or difficulty concentrating."  AR 502.  Dr. Qutub opined that Plaintiff would be able to stand or walk more than 4 hours during an 8-hour workday; sit 6-8 hours; frequently lift or carry 20 pounds; occasionally lift or carry 40 pounds; bend, squat, crouch, and stoop; and reach, push, and pull to a "moderate degree."  AR 503.  Dr. Qutub attributed his mobility limitation primarily to "shortness of breath, body habitus, and arthritis symptoms" and "strongly reccomend[ed] weight management, which may facilitate improvement in [Palintiff's] hypertension and diabetes."  *Id.*

Later in December of 2009, Plaintiff  went to the Mission Medical Clinic complaining of

gout-related left hand and arm pain that he valued at an 8.5 out of 10.  AR 580.

In January of 2010, Plaintiff participated in a sleep study with "markedly abnormal" results.  AR 521-22.  Plaintiff was prescribed a CPAP machine and reported that his sleep improved when using the machine though his sleep was still poor and insufficient.  AR 519 & 568.

### 2.  Additional Medical Evidence

In October of 2010, Plaintiff was seen at the Peak Vista Community Health Centers for anxiety and was prescribed Paxil.  AR 620 & 622.  Beginning in July of 2011, Plaintiff was treated by Erica Kaiser, PsyD.  AR 762.  Dr. Kaiser's diagnostic impressions were that Plaintiff suffered from major depressive disorder, moderate; post-traumatic stress disorder; diabetes; asthma back and joint pain; gout; and financial concerns due to inability to work .  AR 763.  Dr. Kaiser also noted that Plaintiff had a GAF score of 57 up from a score of 55 when she first began treating him.  *Id.*

### C.  Plaintiff's Disability Hearing

At the July 20, 2010, hearing, Plaintiff testified that he suffers from joint swelling, stiffness, and pain in his feet, knees, wrists, and elbows that limits his ability to stand to a maximum of one hour in a day and limits his ability to walk to a maximum of 30 minutes a day. AR 40-2.

The ALJ asked the vocational expert ("VE") if there were existing jobs for an individual of the same age and educational background as Plaintiff who was limited to a full range of light work with a non-exertional limit of only minimal dust, smoke, chemicals, and no temperature extremes.  AR 51.  The VE responded that such an individual could work as a retail sales clerk,

assembler, or cashier II. *Id.*

The ALJ then asked the VE if there was competitive work available for an individual of the same age and educational background as Plaintiff who was limited to a full range of light work "with a sit/stand option, able to alternate at will; minimal dust, smoke, chemicals, fumes; no temperature extremes,; only allow for occasional gripping or grasping, handling., or fingering; no extended arm reaching; no over-chest level work; only occasional bend, squat, kneel, crawl, or climb; and due to symptoms of fatigue, a need to be off-task to rest on an unpredictable basis outside the normal scheduled work breaks." AR 51-2. The VE responded that there would be no competitive work available to such an individual. AR 52.

**D. The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a) & 416.920(a). At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of March 19, 2008. AR 17. At the second step, the ALJ determined that Plaintiff had severe impairments of asthma and obesity. *Id.* At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19.

At the fourth step of the sequential process, the ALJ determined Plaintiff had the RFC to perform light work but in an environment with only a minimal amount of dust, smoke, and chemicals, and no temperature extremes. *Id.* After concluding that Plaintiff had no past relevant work and was a "younger individual" on his alleged disability onset date, AR 21, the ALJ proceeded to the fifth step of the sequential process and concluded that there were a significant

number of jobs in the national economy that Plaintiff was capable of performing.  AR 22.  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  AR 23.

### III.  Standard of Review

In reviewing the Commissioner's decision,  I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hamilton, supra,* 961 F.2d at 1498.  I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).  Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed.  *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

### IV.  Analysis

On appeal, Plaintiff argues (1) that the ALJ erred in his assessment of Plaintiff's RFC because he failed to consider the combined effect of his severe and non-severe impairments and did not base it on substantial evidence in the record; (2) that the ALJ erred in assessing the credibility of Plaintiff's subjective complaints and did not base his assessment on substantial evidence in the record; and (3) that the ALJ failed to apply the correct legal standard in determining at step 3 of the sequential process that Plaintiff's impairments did not meet or medically equal a listed impairment.  I disagree.

**A.  The ALJ's Assessment of Plaintiff's RFC**

In addition to Plaintiff's severe impairments of asthma and obesity, the ALJ found that Plaintiff had documented impairments of gout, depression, sleep apnea, hypertension, kidney problems, and diabetes. AR 17. Based on the medical evidence and hearing testimony, the ALJ found that these impairments did not cause any significant work-related limitations and were therefore non-severe. AR 17 & 18.

Plaintiff argues that the ALJ erred in not assessing Plaintiff with mental, postural, manipulative, or reaching limitations and in not accounting for unplanned absences from work due to both his severe and non-severe impairments. In support of this argument, Plaintiff first cites the consultative examination performed by Dr. Qutub. The ALJ's assessment of Plaintiff's RFC is, however, consistent with Dr. Qutub's findings. In arguing to the contrary, Plaintiff first misstates that Dr. Qutub opined that Plaintiff was only able to stand or walk for 4 hours during an 8-hour workday. In fact, Dr. Qutub opined that the number of hours Plaintiff would be able to stand or walk "appears to exceed four." AR 503. Plaintiff also argues that Dr. Qutub found a limited range of motion in a number of Plaintiff's joints and that this finding dictates the incorporation of postural, manipulative, and reaching limitations into Plaintiff's RFC. This argument ignores the fact that Dr. Qutub himself did not assess Plaintiff with any significant limitations in these areas when he interpreted his own findings. AR 503.

Next, Plaintiff cites the treatment notes of Dr. Kaiser from 2011, or more than 3 years after Plaintiff's alleged March 19, 2008 disability onset date and more than one year after the June 30, 2010 expiration of Plaintiff's insured status for disability insurance benefits, as evidence supporting the assessment of mental impairments and the need for further consideration of the record by the ALJ. Dr. Kaiser's treatment notes were not part of the record at the time of

the ALJ's decision and therefore could not be considered or discussed by him but they were considered by the Appeals Council in denying Plaintiff's request for review of the ALJ's decision. AR 1, 4 & 5. In any event, these notes bear little relevance to whether Plaintiff suffered from a mental impairment during the alleged period of disability considered by the ALJ. *See O'Dell v. Shalala,* 55 F.3d 855, 859 (10th Cir. 1994) (evidence only describing claimant's impairments two years after expiration of insured status did not contradict ALJ's finding that impairments had only minimal effect on claimant's ability to work during relevant time period).

Furthermore, since Dr. Kaiser did not begin treating Plaintiff until July of 2011, there is no basis to re-contact her regarding the effect of Plaintiff's depression and anxiety on his ability to work between March 19, 2008 and June 30, 2010. *See* 20 C.F.R. § 404.1512(e)(1) (*amended and re-codified at* 20 C.F.R. § 404.1520b(c)(1) &(2) (1012)) (requiring ALJ to re-contact medical source where report contains conflict or ambiguity, incomplete information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques). A second consultative examination was likewise not warranted under the circumstances of this case. *See Hawkins v. Chater,* 113 F.3d 1162, 1166-67 (10th Cir. 1997) (ALJ's responsibility to order consultative examination is triggered only when claimant has met burden of showing reasonable possibility that severe impairment exists and such examination would be necessary or helpful to resolve the issue of impairment).

The mere fact that Plaintiff suffers from a number of impairment as found by the ALJ does not compel a finding that Plaintiff has specific work-related limitations. *See Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir. 1988) (mere fact that claimant was suffering from major depression did not automatically mean he was disabled). After reviewing the record, I conclude

that the ALJ's assessment of Plaintiff's RFC in light of all of his impairments is supported by substantial evidence in the record.

**B. The ALJ's Assessment of Plaintiff's Credibility**

The ALJ generally found that Plaintiff was only partially credible because his allegations were disproportionate to the overall objective evidence. AR 21. The ALJ also found that Plaintiff's impairments of gout, joint pain, and hypertension were non-severe because Plaintiff's complaints regarding these impairments were not supported by clinical or diagnostic evidence in the record. AR 20. Plaintiff argues that the ALJ erred in making these findings because Plaintiff's subjective complaints were uncontradicted by the medical evidence and because the ALJ could not reject Plaintiff's complaints solely on the basis that they were not substantiated by objective medical evidence pursuant to 20 C.F.R. § 404.1529(c)(2). I disagree.

Here, despite Plaintiff's assertions to the contrary, the ALJ cited medical evidence contradicting many of Plaintiff's alleged impairments and symptoms. For instance, in discussing Plaintiff's claim of pain throughout his entire body and joint impairment, the ALJ cited a radiograph of Plaintiff's left knee and Dr. Qutub's findings at Plaintiff's consultative examination. AR 20. With respect to Plaintiff's asthma, the ALJ cited evidence that this condition was much improved with medication and again referenced Dr. Qutub's findings at Plaintiff's consultative examination. *Id.* Moreover, the ALJ was not required to consider Plaintiff's subjective complaints unless Plaintiff first proved by objective medical evidence that he suffered from an impairment that could reasonably be expected to produce the symptoms alleged. *Thompson v. Sullivan,* 987 F.2d 1482,1488 (10th Cir. 1993); 42 U.S.C. § 423(d)(5)(A). As noted by the ALJ, there was simply no medical evidence to support some of Plaintiff's

claimed impairments. AR 20 & 21.

As for Plaintiff's argument predicated on 20 C.F.R. § 404.1529(c)(2), this regulation provides that "[w]e will not reject your statements about the intensity and persistence of your pain and other symptoms or about the effect your symptoms have on your ability to work *solely* because the available objective medical evidence does not substantiate your statements." (Emphasis added).  "Objective medical evidence" is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."  *Id.*  Other evidence that may be considered in assessing a claimant's symptoms include the claimant's daily activities; the duration and frequency of the claimant's symptoms; and the effectiveness and side effects of any medication taken to treat the claimant's symptoms.  20 C.F.R. § 404.1529(c)(3).

Here, the ALJ made findings relevant to Plaintiff's credibility regarding his daily living activities (AR 18); the effectiveness and side effects of medications taken by him (AR 20 & 21); observations by health care professionals who treated or examined him (AR 20 & 21); and inconsistent statements by Plaintiff regarding his smoking history (AR 20).  Thus, the ALJ did not reject Plaintiff's statements about the intensity and persistence of his pain and other symptoms or about the effect these symptoms had on his ability to work on the sole basis that these statements were not substantiated by the objective medical evidence in the record.  Rather, the ALJ properly considered other evidence in determining the extent to which Plaintiff's symptoms, including pain, affected his ability to work and evaluated Plaintiff's complaints in light of such other evidence as required by 20 C.F.R. § 404.1529(c)(4).

An ALJ's credibility determinations are generally treated as binding on review.  *Gossett*

*v. Bowen,* 862 F.2d 802, 806 (10th Cir. 1988).  *See also Diaz v. Sec. of Health & Human Serv.,* 898 F.2d 774, 777 (10th Cir. 1991) (credibility determinations are the province of the ALJ and will be upheld provided that they are supported by substantial evidence).  Because there is substantial evidence in the record to support the ALJ's findings regarding Plaintiff's credibility, these findings were not in error.

**C.  The ALJ's Analysis at Step 3 of the Sequential Process**

At step 3 of the sequential process, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19.  Plaintiff argues that the ALJ erred in failing to discuss the evidence he relied on in reaching this conclusion and in not consulting with a medical expert on whether Plaintiff met a medical listing based on his combined impairments of asthma and obesity.   I disagree.

While the ALJ may not have discussed the evidence relating to Plaintiff's impairments of asthma and obesity as part of his step 3 analysis, he did discuss this evidence in assessing Plaintiff's RFC.  AR 20 - 21.  It is therefore unnecessary to remand this case to the ALJ.  *See Fisher-Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir. 2005) ("... an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step 3 conclusion that a claimant's impairments do not meet or equal any listed impairment.").

Additionally, Plaintiff cites no evidence that would support a finding that he met the criteria of Medical Listing 3.02 (chronic pulmonary insufficiency) or 3.03 (asthma).  First, Plaintiff's citation to Medical Listing 3.02 may be in error since Plaintiff cites no evidence that he suffered from chronic pulmonary insufficiency as demonstrated by specific measurements

during the applicable time period.  As for Medical Listing 3.02, Plaintiff cites no evidence that he suffered from (A) chronic asthmatic bronchitis or (B) attacks, "in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year" over the course of 12 consecutive months.  *See Lax v. Astrue,* 489 F.3d 1080, 1085 (10th Cir. 2007) ("To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various criteria for the impairment.").

I therefore conclude that the ALJ applied the correct legal standards in finding that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

## V.  Conclusion

Based on the applicable legal standards,  IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED for the reasons set forth above.


Dated: September   24  , 2013 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE